OPINION OF THE COURT
Anthony K. Pomilio, J.
This is a habeas corpus proceeding brought pursuant to Family Court Act article 6. We are called upon to determine the constitutionality of various provisions of Executive Law article 19-H, known as the Runaway and Homeless Youth Act of 1978, and hereinafter referred to as the Act.
The Act authorizes a runaway youth, a person under the age of 18 years, who is absent from his legal residence without the consent of his parent, legal guardian or custodian, to remain in an approved runaway program on a voluntary basis for a period not to exceed 30 days.
The program staff is required to notify the parent or other custodian, within a short period of time, that the child has been *307 placed in the program, although such notice can be dispensed with under compelling circumstances.
The Act does not give the parents the opportunity to contest the child’s residence with the program for the 30-day period.[1]
The factual background of the present case is as follows:
Respondent operates an approved runaway youth program pursuant to section 532-a of the Act.
Petitioner is the natural father and custodial parent of two children: Holly and Michael. On September 17, 1984, Michael, then age 11 and Holly, then age 10, left petitioner’s home without his consent. Both children thus became runaway children as defined in section 532-a (1) of the Act.[2]
Petitioner then filed a missing persons report with the Utica Police Department on September 18,1984. Later that afternoon, both children appeared at the Utica Police Station. The Utica Police Department then notified the respondent of the children’s presence. Respondent’s employee then went to the Utica Police Station to obtain the children pursuant to the provisions of the Act. While at the Utica Police Station, respondent’s employee advised petitioner via telephone that the children were being provided shelter pursuant to the Act. However, petitioner was neither advised where the children would be residing nor what school they would be attending.
Petitioner subsequently met with the respondent and demanded that he be advised of the children’s whereabouts and that the children be returned to him. Respondent refused to disclose the children’s whereabouts to the petitioner and the children were not immediately returned to him.
Respondent had arranged for shelter and schooling for the children.
Respondent states that petitioner was advised that the children were free to leave at any time, but that they did not wish to do so.
Petitioner then obtained a writ of habeas corpus from this court on October 5,1984, seeking an order directing respondent to transfer the children to him. He contended that the children were being illegally detained because the statute authorizing *308 respondent to provide care for the children and to refuse to reveal their whereabouts from him was unconstitutional.
On October 10, 1984, both children were returned to the petitioner and are presently residing with him.

I

Since the children have returned to petitioner, the relief sought in this proceeding has been obtained and the proceeding is moot.
However, petitioner has requested that we pass upon the constitutionality of various provisions of the Act. Since the Act authorizes a runaway child to remain in an approved runaway program for no more than 30 days, without parental consent, it is unlikely that the question of the Act’s constitutionality would ever be reached prior to the proceeding’s becoming moot. Since mootness would be likely to be recurring, we shall address the issue of the Act’s constitutionality. (Roe v Wade, 410 US 113.)
The Attorney-General of the State of New York has been notified pursuant to Executive Law § 71 that the constitutionality of the statute is being challenged. However, he has declined to participate in the proceeding.
On January 30, 1985, the Institute for Youth Act Advocacy, Covenant House, moved this court for permission to appear amicus curiae in the action. The court has considered that request, and there being no opposition thereto, such request has been granted.

II

The provisions of the Act which are in question are as follows: “The runaway youth may remain in the program on a voluntary basis for a period not to exceed thirty days from the date of admission where the filing of a petition pursuant to article ten of the family court act is not contemplated, in order that arrangements can be made for the runaway youth’s return home, alternative residential placement pursuant to section three hundred ninety-eight of the social services law, or any other suitable plan.” (Executive Law § 532-b [2].)
The youth may remain in the program beyond 30 days for up to 60 days, only if both the parent and the youth consent.
The notice required to be given to the parent, or other custodian, is governed by the following: “The staff of the program shall, to the maximum extent possible, preferably within twenty-four hours but within no more than seventy-two hours following the youth’s admission into the program, notify such *309 runaway youth’s parent, guardian or custodian of his or her physical and emotional condition, and the circumstances surrounding the runaway youth’s presence at the program, unless there are compelling circumstances why the parent, guardian or custodian should not be so notified.” (Executive Law § 532-c [1].)
Thus, the statute requires the program to promptly notify the parent of the child’s presence in the program although it may dispense with such notice if compelling circumstances exist. However, there is no requirement that the parents be notified as to the whereabouts of the child nor are the parents given any opportunity under the Act to contest the arrangement.
It is undisputed that the petitioner’s children qualified as runaway children and had the right to remain in the program for 30 days pursuant to the Act and that the respondent did all that it was required to do under the Act. The issue is whether the provisions of the Act adequately guarantee the petitioner’s due process rights.

Ill

Petitioner contends that the statute impermissibly authorizes an agency of this State to deprive him of the custody of his children without due process of law. He contends that the respondent may not be authorized to provide shelter for his children, without his consent, in the absence of notice and an opportunity to be heard and then, only if there is a judicial finding of neglect, abuse, abandonment or other similar circumstance.
This is a case of first impression, as we are unable to locate any reported decisions which address this issue.
Petitioner relies heavily upon the holding of the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543). Petitioner cites the following language in support of his contention: “[I]ntervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child. It is only on such a premise that the courts may then proceed to inquire into the best interest of the child and to order a custodial disposition on that ground.” (Matter of Bennett v Jeffreys, supra, p 549; emphasis supplied.)
However, this language is not controlling on the issue here presented. Bennett was a custody proceeding in which two par *310 ties, one a parent and the other a nonparent, were seeking custody of a child on a more or less permanent basis.
The present question involves the rights and duties of the State as to children who have voluntarily left the parents’ home, albeit without parental consent. The Act provides a program in which a child may choose to remain for a temporary period only. There is no long-term custody disposition being made.
The conflict addressed is that between the child and the parent, rather than between parties who are vying for the child’s custody. Where conflict exists between the child and the parent, the State has the duty as well as the right to protect the child’s best interests.
“The day is long past in this State, if it had ever been, when the right of a parent to the custody of his or her child, where extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody * * * A child has rights too, some of which are of a constitutional magnitude”. (Matter of Bennett v Jeffreys, supra, p 546; emphasis supplied.)
A child’s running away from home must be considered an extraordinary circumstance which both justifies and requires the State to intervene to protect the interests of the child.
“The State is parens patriae and always has been, but it has not displaced the parent in right or responsibility. Indeed, the courts and the law would, under existing constitutional principles, be powerless to supplant parents except for grievous cause or necessity.” (Matter of Bennett v Jeffreys, supra, pp 545-546; emphasis supplied.)
Certainly, when a child has voluntarily left the home of the parent, a necessity exists which requires the State, as parens patriae, to protect the child.
Petitioner also relies upon Matter of Marie B. (62 NY2d 352), in which the Court of Appeals affirmed this court’s holding that Family Court Act § 1039 (e) was unconstitutional. Petitioner relies upon the following language: “Indeed, this court has repeatedly held that the State may not deprive a natural parent of the right to the care and custody of a child absent a demonstration of abandonment, surrender, persisting neglect, unfitness or other like behavior evincing utter indifference and irresponsibility to the child’s well-being * * * Legislation which *311 authorizes the removal of a child from the parent without the requisite showing of such extraordinary circumstances constitutes an impermissible abridgement of fundamental parental rights.” (Matter of Marie B., supra, p 358; emphasis supplied.)
However, petitioner’s reliance upon the above language is likewise misplaced. What is prohibited is the State’s removal of a child from a parent without the requisite showing. The term removal connotes that it is State action which has caused the child to be away from the home of the parent.
However, the Act does not authorize the State to remove a child from a parent. The Act merely authorizes the State to provide a program in which the child may temporarily seek shelter and assistance. The child is neither removed nor detained by the program, since it is the child who has sought refuge in the program, for which he is free to leave upon his request unless a court order has been entered.
“Fundamental constitutional principles of due process and protected privacy prohibit governmental interference with liberty of a parent to supervise and rear a child except upon a showing of overriding necessity.” (Matter of Marie B., supra, p 358; emphasis supplied.)
Where a child has left the home of the parent there exists an overriding necessity which requires the State to act to protect that child.
The Legislature has sought to provide a temporary solution to the immediate problems faced by runaway children. The Legislature’s findings and purposes are set forth as follows:
“Legislative declaration and purpose. The legislature hereby finds and declares that juveniles are running away from home at alarming rates. Runaway youth are without protection and the ordinary means of support, exposed to unnecessary danger and become victims of various illicit businesses which prey upon their vulnerability. This act is designed to establish procedures and services to help protect runaway youth and to alleviate the personal or family situations which present a threat to the health or safety of the youth or the family.
“The legislature recognizes that when a youth runs away from home it is symptomatic of some underlying personal or family conflict. The policy of this state is to provide assistance to such persons and to protect and preserve families. The legislature further recognizes, that because of their age and situation, runaway youth are urgently in need of temporary shelter and counselling services. Therefore, it is not only the purpose of this *312 act to reunite youth and their parents, but also to provide appropriate services to help runaway youth cope with their problems.” (L 1978, ch 22, § 1.)
Even assuming that the child had run away from home merely to escape reasonable parental control, the child’s right to remain in the program will expire after 30 days. However, if it is determined that the child’s running was symptomatic of some more pressing problem, the program may file appropriate petitions in Family Court, report the matter to the appropriate agency, or refer the youth and his family to various agencies which may provide some assistance.
This court recognizes that when a child runs away from home and seeks refuge in a program created under the auspices of the Act, the parent will be temporarily without the custody of the child without a judicial determination of any kind. However, we emphasize that it is not the State which is either removing or detaining the child. Rather, the State is merely providing temporary refuge for the child who has left the parent’s home without their consent.
This court cannot close its eyes to what frequently happens to those youths who have run away from home. If a child has run away, whether or not for just cause, that child will seek refuge somewhere. It is essential that there exists a government approved alternative to the streets.
The court and the State would be shunning their responsibilities to these children if they were told they could not seek refuge in a State sanctioned program until a judicial determination was made authorizing such placement.
The court, therefore, finds that the provisions of section 532-b (2) and section 532-c (1) of article 19-H of the Executive Law are constitutional.
We wish to note that the viability and acceptance of such a program will exist only as long as all of the safeguards built into the program are observed. While the statute authorizes the program staff to dispense with notice to the parents under compelling circumstances, the provision should be invoked rarely, if ever. The program staff must be ever vigilant to observe the spirit and purpose of the legislation, as set forth above.

. The parent does have the right to commence a habeas corpus proceeding under Family Court Act article 6 as was done in the present matter.

. “ ‘Runaway youth’ shall mean a person under the age of eighteen years who is absent from his legal residence without the consent of his parent, legal guardian or custodian”. (Executive Law § 532-a [1].)