*246 OPINION OF THE COURT
Judith S. Claire, J.
This matter is before the court upon a writ of habeas corpus filed by the custodial father, Mark N., for the return of his daughter, Natalie N. Natalie is 13 years old, born February 2, 1988. The child is currently staying in the Runaway Homeless Youth Shelter, which is commonly (and hereafter) referred to as the “Safehouse.” The child went to the Safehouse on or about September 10, 2001. The father attempted to contact the child and ultimately to have the child return home and was refused access to the, child.
Notice was given to the Attorney General who declined to appear. Each attorney was given the opportunity to make submissions. It appears that the only case on point since the law was passed in 1978 is Matter of Curran (128 Misc 2d 306).
The article covered by Executive Law § 532 is known as the “Runaway and Homeless Youth Act of 1978.” The Safehouse is an “approved runaway program” as defined by Executive Law § 532-a (3). Counsel for the Safehouse and the Law Guardian contend that under Executive Law § 532-b (2) the child may reside in the Safehouse for a period of 30 days with no remedies or action allowed by the parents for the return of the child. The law states in pertinent part as follows: “The runaway youth may remain in the program on a voluntary basis for a period not to exceed thirty days from the date of admission where the filing of a petition pursuant to article ten of the family court act is not contemplated, in order that arrangements can be made for the runaway youth’s return home, alternative residential placement pursuant to section three hundred ninety-eight of the social services law, or any other suitable plan.” (Executive Law § 532-b [2].)
A complete review of the entire article does not contain any specific prohibitions against a parent filing a writ of habeas corpus. The implication is that the “may” remain language in section 532-b (2) prohibits this action. Counsel relies almost exclusively on the case of Matter of Curran (supra) in reaching their conclusion. This is a 1985 Oneida County Family Court decision that was never brought before a higher, binding court.
This court has reviewed the Oneida County Family Court decision. The Oneida County Court states that the parent has a right to commence a habeas corpus proceeding under Family Court Act article 6. That court concluded that the parent was not provided with a specific right under this Act, thus they *247 were prohibited from filing the writ of habeas corpus for the first 30 days. This court disagrees with that assumption. However, if this court were going to agree that the parents were prohibited from filing for the return of the child, then the court would be compelled to find the law unconstitutional.
The Legislature in the declaration and purpose of the Act states the following:
“This act is designed to establish procedures and services to help protect runaway youth and to alleviate the personal or family situations which present a threat to the health or safety of the youth or the family.
“The legislature recognizes that when a youth runs away from home it is symptomatic of some underlying personal or family conflict. The policy of this state is to provide assistance to such persons and to protect and preserve families. The legislature further recognizes, that because of their age and situations, runaway youth are urgently in need of temporary shelter and counseling services. Therefore, it is not only the purpose of this act to reunite runaway youth and their parents, but also to provide appropriate services to help runaway youth cope with their problems.” (L 1978, ch 722, § 1, reprinted in McKinney’s Cons Laws of NY, Book 18, following Executive Law § 532.)
This court does not believe that preventing a parent from applying to the court for a period of 30 days promotes the intent of the legislation. The intent is to reunite families. Clearly the family with a child that leaves the home against a parent’s directive is in need of services or assistance by a third party. The Safehouse is acting in place of the state to protect the child’s interest by offering the child a safe place to reside and other needed assistance. However, in the interests of reuniting a family, a stated purpose of the Act, the parent must also be able to address the issues that drove the family apart. A prohibition, even for a period of 30 days, is an infringement of the parent’s due process rights under the United States Constitution.
The Law Guardian argues that the parent’s due process rights are not denied but rather delayed. However, the statute does not allow the child to exceed a 30-day stay in the shelter unless the parent, guardian or custodian agree, in writing, to the extension. After 30 days, it no longer becomes a due process issue, it is moot, as the parent may simply withhold consent entirely.
There is no question that children run away from home and that they need a safe place to run to where they will be *248 -protected. Without such a statute, children will fall prey to drug peddlers and sex purveyors and others of similar ilk. The need for the statute is clear. The question, however, is if the statute provides a sufficient balancing of both the parent and the child’s need.
Children run away for many reasons, some legitimate and some not legitimate. In the case at hand, the father alleges that Natalie ran away over an argument concerning a pair of sneakers. The Law Guardian says that this is bogus and that there are long-standing serious issues that led to her leaving the home.
In the court’s daily work, it is impossible not to notice the number of children locally who run to the Safehouse. While most may run for valid reasons, there are some who use the Safehouse solely as a means to defy their parent. Regardless of the reason Natalie ran, it is troubling to think that her parent would come to the Safehouse and be unable to even see her to determine if she were at least all right. The court can find nothing in the statute that would prohibit the Safehouse from at least allowing the parent to see his child.
The state, through the Safehouse, has been put in a position of parens patriae. The state takes this role with children in abuse and neglect proceedings under article 10 of the Family Court Act. In those cases children may be removed from their parent’s home without court order if the Department of Social Services determines that they are in imminent risk of harm. In those cases, however, parents are not deprived of their right to due process to seek the return of their children. In fact, once an application for the return of the children is made, the court is mandated to hold a hearing within 72 hours of receiving the application. In a circumstance of abuse where the risk of harm is more imminent, the parent’s due process rights are balanced with the child’s and only delayed for 72 hours. (In today’s court schedule that is really the next available moment of the court’s time and time to quickly assign counsel to prepare for the case.)
If a creditor repossessed Mr. N.’s car through a replevin procedure, he would be entitled to a hearing regarding the return of that property. “The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment — to minimize substantively *249 unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party.” (Fuentes v Shevin, 407 US 67, 80-81.)
By holding that parents do not possess a right to seek application to the court for the return of the child, it would appear that there are more protections in place for the removal of chattel or for a parent who has committed a wrong than for a parent charged with no offense who is deprived of control of his child.
The right of a parent to the custody and control of a minor child is one of our fundamental rights as United States citizens. (Meyer v Nebraska, 262 US 390, 399; Bellotti v Baird, 443 US 622, 637-639.) While there are many cases dealing with the issue of a parent versus a nonparent regarding care and custody of a child, there are none dealing with a parent versus the child.
The father would have this court find the entire statute unconstitutional in light of the recent decision of the United States Supreme Court in Troxel v Granville (530 US 57). The United States Supreme Court stated in its decision as follows: “The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the liberty protected by the Due Process Clause includes the right of parents to ‘establish a home and bring up children’ and ‘to control the education of their own.’ Two years later in Pierce v. Society of Sisters, 268 U.S. 510, 534-535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held that the ‘liberty of parents and guardians’ includes the right ‘to direct the upbringing and education of children under their control.’ We explained in Pierce that ‘the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.’ Id., at 535, 45 S.Ct. 571. We returned to the subject in Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. ‘It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.’ Id., at 166” (Troxel, supra at 65-66).
*250 In Troxel, the Supreme Court limited the court’s ability to intervene in allowing visitation with people that the parent does not feel are appropriate. In the case before the court, the Law Guardian and the Safehouse would have this court interpret the law in New York to allow a party to retain custody of a child, against the parent’s wishes, without recourse to the courts for an entire month. This court cannot accept that premise.
As the United States Supreme Court explained in Parham v J. R. (442 US 584, 602):
“[0]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations * * * The law’s concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life’s difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.” (Internal quotation marks and citations omitted.)
“Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent’s children. See, e.g., Flores, 507 U.S. at 304.” (Troxel, supra at 68-69.)
As eloquently pointed out by Judge Duggan, in Webster v Ryan (189 Misc 2d 86), the State of New York has through the judiciary limited some of parents’ rights with respect to their children. Further, he states “Accompanying the judiciary’s foray into the management of parent and child family relationships, has been the legislature’s. There are any number of laws that restrict the activities of juveniles. Most, if not all, of those laws were passed without any mention that they restrict the child’s parent’s right to permit the child to engage in certain activities or engage in them in a fashion that the parent feels is appropriate” (at 118).
Under the Executive Law, there is no weighing or balancing of interests between the child and parent. No consideration may be given to the child’s circumstances. A parent is provided no say at all. The minor is given sole control regardless of the parent’s request that the child return home and regardless of whether or not it would be in the best interest of the minor.
*251 Governmental intrusions on fundamental rights are subject to strict scrutiny. The state must prove that it has a compelling state interest in its infringement of a protected right. Furthermore a showing that no less restrictive means is available is necessary. In Parham v J. R. (supra at 602-603), the Court stated: “That some parents may at times be acting against the interests of their children * * * creates a basis for caution, but is hardly a reason to discard wholesale those pages of human experience that teach that parents generally do act in the child’s best interests * * * The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition.” (Internal quotation marks omitted.)
By not providing a balancing of the interests, the statute places the Safehouse in a position that is superior to the parent. In Webster v Ryan (supra), the court set forth a procedure to balance the child’s right to visit a foster parent and that of a biological parent. The Webster decision (supra at 90) spoke specifically of the fact that the child’s “right has constitutional protection but that this right must be balanced with the unquestionable fundamental right of the parent to raise his son without undue state interference.”
It is the decision of this court that Executive Law § 532-b is unconstitutional as applied and violates due process rights of the parent. This court holds that the parent may bring a writ of habeas corpus for the return of the child prior to the expiration of the 30 days. The court, in balancing both the child’s and the parent’s due process rights, holds that a hearing must be held in this matter. The issue the court must address is whether the best interests of the child are served by remaining in the Safehouse or by the return of the child. The court finds that the child has the burden of showing that the best interests of the child are served by not returning home immediately. The standard of proof shall be by a preponderance of the evidence.