467 A.2d 121 (1983)
In re A.D., Jr., R.D., and M.S., Juveniles.
No. 82-482.
Supreme Court of Vermont.
September 13, 1983.
*122 William D. Wright and K. James Malady, III, Bennington County Deputy State's Attys., and Ralph Sheppard, Law Clerk, on the brief, for plaintiff-appellee.
Rhys Evans, Manchester Center, for defendants-appellants.
Before BILLINGS, C.J., and HILL, UNDERWOOD, PECK and GIBSON, JJ.
PECK, Justice.
This is an appeal by the parents of A.D., Jr., R.D. and M.S. from an order of the juvenile court declaring their children to be in need of care and supervision, and placing them in the custody of the Department of Social and Rehabilitation Services [SRS] with residual rights remaining in the parents. We affirm.
On appeal, the parents raise three major issues for our consideration: first, whether they received adequate notice of the grounds for the petition to take the children into immediate custody pursuant to 33 V.S.A. § 647(d); second, whether the standard of proof to be applied in juvenile proceedings not involving permanent termination of parental rights is the clear and convincing evidence test; and third, whether the parents, who failed to make a timely request for an expert, were entitled to have a psychiatrist appointed to examine the children and to counter the testimony of the psychiatric expert who testified for the State.
The parents and three children, aged 7, 5, and 7 months, lived in Rupert, Vermont, in a mobile home without running water or any method of sewage disposal. The interior or of the trailer was strewn with bagged and unbagged trash, papers, dirty dishes *123 covered with crusted-on and rotten food, broken glass and bottle caps, dirty clothes and human waste. The yard surrounding the trailer contained a similar array of garbage.
Two SRS caseworkers visited the residence as a result of information from neighbors. After the visit, one of the caseworkers wrote a letter to the parents. The letter suggested ways to improve the environment for the children, informed the parents that SRS would be making periodic checks to monitor the improvement, and warned them that if improvements were not made within 90 days a petition alleging neglect would be brought pursuant to 33 V.S.A. § 639(3). Some changes were made but were found to be unsatisfactory by caseworkers, and on February 22, 1982, the state's attorney brought petitions alleging that each of the children was "without proper parental care or subsistence, education, medical, or other care necessary for his well being." On February 23, 1982, the children were taken into custody. On the same day a detention hearing was held and the court found continued detention of the children to be warranted. On March 12, 1982, a merits hearing was held and the court found the children to be in need of care and supervision. Finally, a disposition hearing was held on May 13 and May 27, 1982, and in its disposition order the court transferred legal custody to SRS with residual rights remaining with the parents.
Appellants contend that the petitions alleging that each child was "without proper parental care or subsistence, education, medical, or other care necessary for his well-being" were improper. They claim that the petitions were defective in that they did not set forth specific allegations of the grounds relied upon for state intervention, but rather that the language used merely quoted the definition of a "child in need of care or supervision" contained in 33 V.S.A. § 632(a)(12)(B). We have had occasion to examine this claim in the past, and we have held such petitions to be sufficient although we stated that "it would be better practice for the State to provide for specific allegations of the grounds relied on in its petition . . . ." In re S.A.M., 140 Vt. 194, 197, 436 A.2d 736, 738 (1981).
Here the petitions were accompanied by an affidavit of the SRS caseworker. This affidavit contained specific allegations of the conditions in and around the trailer, and stated in detail the reasons why SRS felt the children were without proper parental care or supervision. Such an affidavit in conjunction with a petition does not give parents "insufficient notice under due process standards." Id. at 197, 436 A.2d at 737. This entire proceeding was not impermissibly tainted as a result of this petition to the extent that everything flowing from it should be set aside.
The next issue raised by the parents is whether the standard of proof in cases not involving permanent termination of parental rights should be the preponderance of the evidence test or whether the higher standard of clear and convincing evidence is called for. The clear and convincing evidence test must be used in cases involving the permanent termination of parental rights. Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982). In some states this same standard must also be used in cases that do not involve permanent termination, but merely place the children in the custody of the state with residual rights remaining in the parents. See, e.g., In re Brenda H., 119 N.H. 382, 389, 402 A.2d 169, 174 (1979). In other states the preponderance test is accepted. See, e.g., In re Sabrina M., 460 A.2d 1009, 1015-17 (Me.1983).
It may not be necessary to address this issue here since, in our judgment, the evidence is sufficient to support the decision of the trial court regardless of the standard used. Nevertheless, we believe the trial courts are entitled to know which standard of proof to apply in deciding cases in which the permanent termination of parental rights is not involved. The issue was addressed by the court below and is squarely before us on this appeal. We hold, therefore, that the trial court here was correct: proof by a preponderance of the evidence is the proper standard.
*124 When the State intervenes in the area of child neglect, it does so as parens patriae to the child; it has a legitimate and compelling interest in the safety and welfare of the child. In re Neglected Child, 130 Vt. 525, 530-31, 296 A.2d 250, 254 (1972). In such cases, two fundamental interests are involved: (1) the interest of parents and child in maintaining family integrity, and (2) the interest of the child in his/her safety and welfare. The Supreme Court of Maine discussed these competing interests in the following terms:
On balance, however, both the interests of the state and the parents are substantial and neither seems clearly paramount to the other. We think that an elevated standard of proof does not adequately balance these competing interests because it necessarily indicates a preference for the parents' interest. Although a stricter standard creates a smaller risk that parental rights will be erroneously curtailed in a child protection proceeding, it also creates a greater risk that the child will be forced to remain in or return to a jeopardous environment. Here, especially because the parental rights will at most be temporarily curtailed, we think that the State's interest in protecting a child from the risk of serious and potentially irrevocable harm counterbalances the parents' interest in avoiding an erroneous curtailment of their rights. Accordingly, we conclude that use of proof by a preponderance of the evidence standard reflects that the risk of error should be borne in roughly equal fashion and satisfies due process in a child protection proceeding.
In re Sabrina M., supra, at 1017; see also In re Juvenile Appeal, 189 Conn. 276, 300, 455 A.2d 1313, 1324-25 (1983) (adopts the preponderance of the evidence standard of proof on the ground that the private interests are relatively balanced and because any deprivation of rights is both temporary and reviewable).
In the case at bar, the trial judge found, inter alia, that the home was "extremely ill-kept," that "food and human feces [were] smeared on walls," that the home had "an extremely foul and sickening odor," and that the two older children had "conduct disorders" resulting from being "raised under high levels of stress with harsh and primitive parental care." The judge then came to the "clear conclusion" that all three children "have been subject to an intolerable environment." We hold that, while improvements have been made under the continuing pressures of SRS and the pending proceedings, the evidence supporting these findings and conclusions clearly satisfies, and in fact exceeds, the requirements of the preponderance test. A nonpermanent deprivation of parental rights was clearly warranted in this case.
Finally, the parents contend that the court should have appointed a psychiatrist to examine the children and to aid the parents in countering the testimony of the psychiatric expert who testified for the State. Counsel for the parents did not raise this issue until his closing arguments when he requested a psychiatric expert to assist the parents if the court should make a finding of neglect. The court made such a finding, and in its adjudication order gave the parents leave to file motions for the appointment of the expert prior to the disposition hearing. The parents failed to take advantage of this opportunity and no motions were filed. Now, on appeal, they claim that the appointment of the expert after the children had been determined to be in need of care and supervision would have been meaningless since the decision had already been made.
The court never made a final ruling that it would not allow an expert; rather, it left the question open. "Because of the lack of diligence on the part of the [parents] in pursuing this motion to a final ruling by the trial court, we hold that the [parents] can claim no error." State v. Dubois, 142 Vt. 391, 397, 457 A.2d 623, 626 (1983).
Affirmed.