### In re Tonya Selivonik

[670 A.2d 831]

No. 94-170

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed November 17, 1995

*Robert Appel,* Defender General, *Anna Saxman,* Appellate Defender, and *Karen Barney,* Legal Intern, Montpelier, for Appellant.

*Jeffrey L. Amestoy,* Attorney General, Montpelier, and *Michael O. Duane* and *Alexandra N. Thayer,* Assistant Attorneys General, Waterbury, for Appellee Department of Social and Rehabilitation Services.

**Johnson, J.** Petitioner sought to expunge her name from a state registry of sex abusers and appeals from an order of the Human Services Board denying her petition. We affirm.

## I.

Petitioner was 15 years old in October 1988, when the Department of Social and Rehabilitation Services (SRS) initiated delinquency proceedings against her as a result of a violation of 13 V.S.A. § 3252(3), which allegedly occurred in May 1988. The petition charged that she had engaged in inappropriate sexual conduct by fondling and kissing a child's penis while babysitting the child. The court dismissed the delinquency petition in December 1988, and the State did not appeal. The juvenile record in that matter was then sealed.

The complaint was investigated by an SRS worker[1] and a state trooper, and in June 1988, SRS independently determined the complaint was substantiated and entered petitioner's name in its state registry for sex abusers.[2] Petitioner was not notified of SRS's determination that the report was substantiated and was not told her name was entered on the state registry.

In the fall of 1992 petitioner was employed at a day care center, and some time after she began work, the program's director was told by a parent that allegations of sexual assault had previously been made against petitioner. The director confirmed the report with SRS, which warned that the program would be in violation of its license if it continued to employ petitioner. Petitioner was discharged from her employment.

In January 1993 petitioner applied to the Human Services Board for an order expunging her name from the state's registry. After an administrative hearing, the hearing officer recommended that petitioner's record be expunged from the state's registry, based on his interpretation of the registry statute and without reaching a decision on the merits. The Board rejected the hearing officer's interpretation and remanded for a decision on the merits. The hearing officer made further findings of fact and recommended that the petition be denied.

---

[1] The SRS investigation was undertaken pursuant to 33 V.S.A. § 4915.

[2] The sexual abuse registry is created by statute, 33 V.S.A. § 4916, and contains records by name of offenders and victims of child sexual abuse. An owner or operator of a day care facility licensed or registered by SRS may request from SRS a record of substantiated reports of child abuse for a current or prospective employee. SRS will inform the requesting owner or operator if such a record exists. 33 V.S.A. § 309.

The recommendation was accepted by the Board. The present appeal followed.

## II.

Petitioner argues first that since she was a child at the time her name was entered into the state child abuse registry, she has the right to expungement under 33 V.S.A. § 4916(g), which provides:

> (g) A person may, at any time, apply to the human services board for relief if he or she has reasonable cause to believe that contents of the registry are being misused. *All registry records relating to an individual child shall be destroyed when the child reaches the age of majority.* All registry records relating to a family or siblings within a family shall be destroyed when the youngest sibling reaches the age of majority. *All registry records shall be maintained according to the name of the child who has been abused or neglected, and the name of the person about whom the report was made.*

(Emphasis added.)

Petitioner contends that the Board ignored the plain meaning of the statute in ruling that the word "child" in § 4916(g) applied only to the victim and not to the person about whom the report was made, since the statute provides, "All registry records relating *to an individual child* shall be destroyed when the child reaches the age of majority." We do not agree.

■ As originally drafted, § 4916(g) concluded with the clause, "All registry records shall be maintained according to the name of the child who has been abused or neglected." 1981, No. 207 (Adj. Sess.), § 1. There was no provision for maintenance of records in the name of the perpetrator. Thus, the original references to "child" had only one meaning — the child who was the victim of abuse. As petitioner concedes, the name of the abused child and the perpetrator were expunged when the child reached the age of majority. The statute's concluding phrase, "and the name of the person about whom the report was made," was added by the Legislature in 1990. 1989, No. 295 (Adj. Sess.), § 5. The obvious purpose was to prevent loss of the perpetrator's name when the abused child's name was expunged from the registry.

■ Petitioner argues that once "the person about whom the report was made" was included in the section, the Legislature also

intended a change in the previous meaning of "child" to cover a child who was also a "person about whom the report was made." Petitioner argues that testimony by a witness before the House Health and Welfare Committee in 1990 supports her argument that the Legislature intended to allow expungement of child perpetrators when they became adults. Although a legislative witness did advocate this position to the committee, and suggested language be added to the bill to effectuate this result, the Legislature did not do so. In the context of a statute whose main purpose is the prevention of child abuse, the more persuasive interpretation is that the names of perpetrators were to be maintained regardless of age.

Petitioner persuasively argues that our interpretation of the statute is inconsistent with the more general public policy of the state relating to juvenile offenders, which is to "remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior." 33 V.S.A. § 5501(a)(2). It is somewhat ironic that if petitioner had been convicted of child sexual abuse in juvenile proceedings, her record would have been sealed to protect her from the stigma of her misconduct in adulthood. See *In re R.D.*, 154 Vt. 173, 176, 574 A.2d 160, 161 (1990). Moreover, her conviction in the juvenile court would not have permitted the imposition of any civil disabilities resulting from the conviction or operated to disqualify her from any civil service application or appointment. 33 V.S.A. § 5535(a). Instead, petitioner is permanently stigmatized by a Human Services Board finding, based on a preponderance of the evidence, that she committed one instance of sexual abuse.[3] Although an expungement remedy is available in theory, the Legislature left no discretion in the Human Services Board to expunge an act for reasons other than that the allegation is untrue.

Nevertheless, that the sexual abuse registry statute is seemingly contradictory to other public policies of the state is not sufficient to overcome the Legislature's intent to treat child sexual abuse as a special area of concern warranting different treatment. The solution to petitioner's problem, if there is to be one, lies with the Legislature.

---

[3] The committee hearings on the amendments indicate that the Legislature's concern was with repeat offenders who, if not listed as perpetrators, could escape notice when the child victims reached the age of majority. No witness before the committee raised the problem of stigma that might occur from a single offense committed by a minor.

## III.

Petitioner next argues that her inclusion on the state registry violates her Fourteenth Amendment due process rights. She contends that the standard of proof required both for substantiation of an abuse complaint and at the hearing on expungement falls below the due process standard of a preponderance of the evidence articulated by the court in *Valmonte v. Bane*, 18 F.3d 992, 1004 (2d Cir. 1994) ("some credible evidence" standard did not allow for balancing of evidence from both sides, as allowed by "fair preponderance" standard, which is constitutionally appropriate).

SRS does not dispute petitioner's claim that inclusion on the state registry implicates protected liberty and property interests of petitioner. See *Valmonte*, 18 F.3d at 1002 (holding that statutory impediment to employment caused by inclusion on state child abuse registry implicates liberty interest). SRS also does not challenge petitioner's argument that the Human Services Board must apply a preponderance of the evidence standard in its hearing on petitioner's request for expungement. See *LaFaso v. Patrissi*, 161 Vt. 46, 54, 633 A.2d 695, 700 (1993) (noting that, "as a general rule," preponderance standard applies in administrative adjudications in Vermont). The focus of the parties' dispute on this issue is whether the Board actually applied the preponderance standard.

Petitioner's claim that the Board did not apply the preponderance standard fails because she does not distinguish between the low standard of proof required for substantiation of an abuse complaint, and the higher standard that is applied at an expungement hearing. An abuse complaint is substantiated, and entered into the state registry, if SRS determines "after investigation that a report is based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." 33 V.S.A. § 4912(10). Thus, prior to the Board's de novo hearing, agencies investigating reports of suspected child abuse need not apply a preponderance of evidence standard to their determinations.

■ The court in *Valmonte* appears to suggest that a preponderance standard is required at the time of initial determination, as well as at the hearing. *Valmonte*, 18 F.3d at 1004. We do not agree that the initial investigation of a report must be conducted under the higher standard. We note, however, that the New York Central Registry at issue in *Valmonte* had a number of differences from the Vermont registry. Most importantly, in New York a person included in the

registry was not entitled to a hearing conducted under a preponderance standard unless the person had lost a job or been fired because of inclusion in the registry. *Id.* at 997. In Vermont, a person included in the registry has the right at any time to petition for expungement, 33 V.S.A. § 4916(h), and is entitled to a fair hearing conducted under the preponderance standard. A higher standard at the investigatory stage is not necessary to meet due process concerns because of the availability of such a hearing at any time after inclusion in the registry.

At a hearing by the Board on a petition for expungement, the burden is on SRS to establish that a record should not be expunged. 33 V.S.A. § 4916(h). The Board requires SRS to meet this burden by demonstrating by a *preponderance of the evidence* that the report is based upon accurate and reliable information and that the information would lead a reasonable person to believe that a child has been abused or neglected.

This higher standard was applied by the Board in reaching its decision in this case. The Board concluded:

> [O]ther than the petitioner's denial of the allegations and unsupported, if plausible, conjecture as to some alternative explanation, there is no evidence that would call into question either the veracity of the children and their ability to have accurately reported what allegedly occurred or their (or their mother's) motives in bringing these allegations to the attention of the police and SRS.
>
> In light of the above, despite the striking of the children's testimony, it is concluded that SRS's "substantiation" of the report of child sexual abuse in question is supported *by a preponderance of the evidence.*

(Emphasis added.)

Petitioner further contends, however, that the preponderance standard applied by the Board requires a lesser showing than the "fair preponderance" standard articulated in *Valmonte*, 18 F.3d at 1004. Specifically, petitioner argues that the Board's standard does not require the finder of fact to be "convinced by a preponderance of evidence that the abuse occurred, but only that some reasonable person could believe that the abuse occurred." We recognize that the Board's modified phrasing of the preponderance standard could lead to some confusion as to the standard of proof required.

■ Even if petitioner were correct in her assertion that the Board applied a lower standard of proof than preponderance of the evidence, the evidence in this case was sufficient to show by a preponderance of the evidence that the incident of abuse occurred. The Board relied primarily on the hearsay testimony and written notes of the SRS investigator and the police officer who interviewed the child. The Board found that the police officer and investigator were "experienced" and "unbiased," that their oral testimony and written notes showed that the child's allegations were "specific and left little room for mistake or misinterpretation," that their written reports were prepared soon after the interview took place, and that their written reports were consistent.

■ Although the Board's decision is supported only by hearsay evidence, that evidence has sufficient indicia of reliability to support a finding by a preponderance of the evidence that the alleged abuse occurred. See *Watker v. Vermont Parole Bd.*, 157 Vt. 72, 76-77, 596 A.2d 1277, 1280 (1991) (hearsay may be sole evidence in revocation proceeding if determined inherently reliable). In *Watker* we stated that we must "evaluate the weight each item of hearsay should receive according to the item's truthfulness, reasonableness, and credibility." *Id.* at 77, 596 A.2d at 1280. Here, the sources of the hearsay evidence were disinterested persons, the hearsay was specific and detailed, and the two hearsay accounts were consistent. The hearsay evidence had sufficient indicia of reliability to support the Board's decision.

## IV.

■■ Finally, petitioner asserts that SRS lacked jurisdiction to substantiate the report of sexual abuse following dismissal of the juvenile proceedings against her, based on 33 V.S.A. § 5503(a), which provides:

(a) The juvenile court shall have exclusive jurisdiction over all proceedings concerning any child who is or who is alleged to be a delinquent child or a child in need of care or supervision brought under the authority of this chapter, except as otherwise provided in this chapter.

(b) The orders of the juvenile court under the authority of this chapter shall take precedence over any order of any other court of this state, except an order establishing child support, *to the extent inconsistent therewith.*

(Emphasis added.) As 33 V.S.A. chapter 49 has legislative goals, functions, and procedures completely different from those under 33 V.S.A. chapter 55, an SRS determination under chapter 49 that a sex abuse report has been substantiated, or a de novo affirmance of that determination by the Board, cannot be "inconsistent" with the judgment of a family court (sitting as a juvenile court). Chapter 55 is concerned with the issue of delinquency; the issue in chapter 49 proceedings is substantiation of an abuse complaint. The most salient demonstration of the two-track nature of the respective abuse-reporting and correction proceedings under chapters 49 and 55 is the lack of any reference in chapter 49 to the judgments or records in any other proceedings. Moreover, the broad, remedial purposes of the Child Abuse and Neglect Reporting Act would not be served by tying its very carefully crafted criteria for substantiating a report of abuse to the outcome of adult criminal or juvenile proceedings relating to the conduct of the person about whom the report was made.

*Affirmed.*