15 A.3d 112 (2010)
2010 VT 105
In re M.E. (Department for Children and Families, Appellant).
No. 09-374.
Supreme Court of Vermont.
December 16, 2010.
*113 Evelyn Taylor, Quechee, for Petitioner-Appellee.
William H. Sorrell, Attorney General, Montpelier, and Jody A. Racht and Martha E. Csala, Assistant Attorneys General, Waterbury, for Respondent-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
REIBER, C.J.
¶ 1. The Department for Children and Families (DCF) appeals from the Human Service Board's order reversing DCF's decision to include petitioner M.E. in its child-abuse-and-neglect registry. We reverse and remand.
¶ 2. The Board made no findings of fact in this case, but the record indicates the following history. On May 25, 2008, petitioner's son, P.L., who was twelve years old, suffered a serious drug overdose. At the time of the overdose, P.L. had Xanax, cocaine, marijuana, and Benzodiazepine in his system, P.L. was taken to the hospital and then to the Brattleboro Retreat. P.L. indicated that he started smoking marijuana at age six and had been smoking it regularly since then. He began drinking alcohol at age nine and used cocaine occasionally as well. Hospital staff and a police officer expressed concerns about petitioner's permissive attitude toward P.L.'s use of marijuana, and these concerns were reported to DCF.
¶ 3. On May 28, 2008, P.L. was discharged from the Brattleboro Retreat into petitioner's custody against medical advice. The Retreat's after-care plan recommended: (1) weekly outpatient substance abuse treatment; (2) weekly family therapy; (3) close supervision before and after school; (4) around-the-clock adult supervision for the first two weeks followed by a reassessment of safety and compliance; and (5) a petition seeking a determination that P.L. was a child in need of care or supervision (CHINS) if P.L. was unwilling to follow his parents' expectations. Shortly after his discharge, P.L. missed an appointment with his school-based mental health counselor; he was also apparently *114 removed from school in June for being under the influence of marijuana.
¶ 4. In August 2008, following an investigation, DCF substantiated petitioner for placing P.L. at "risk of harm."[1] More specifically, DCF concluded that petitioner placed her son at risk of serious physical harm by failing to schedule a drug and alcohol assessment for him immediately following his drug overdose and subsequent hospitalization on May 25. Despite recommendations that called for intensive follow-up care, DCF found that petitioner had not provided such care in a timely fashion. DCF provided petitioner with a case worker to assist her in addressing the concerns identified in its investigation. Petitioner requested a review of DCF's decision. Following such review, which included a meeting attended by petitioner and P.L., the independent reviewer upheld the decision to substantiate petitioner.
¶ 5. In a letter to petitioner, the reviewer recounted the following information. Petitioner's position was that DCF did not accurately report her actions. She maintained that P.L. was depressed because his father was in jail. She indicated that P.L. had recently started to see a therapist, and he was doing well in treatment. She could not understand why DCF was "so concerned about the time it took for [her] to arrange treatment" for P.L.
¶ 6. The reviewer found that P.L. was discharged on May 28, after hospitalization for a serious drug overdose. He was discharged to petitioner's custody against medical advice, with the recommendation that petitioner seek increased wrap-around services and care for him. DCF's specific understanding was that petitioner would schedule a drug and alcohol assessment for P.L., given concerns that P.L.'s drug use might lead to an inadvertent overdose. Petitioner was reportedly "terrified" about this possibility, and ready to pursue outpatient treatment. Despite urgings by DCF, however, petitioner scheduled no further therapeutic appointments until August 14, 2008, more than ten weeks after the discharge date, and shortly after DCF made its final assessment of risk on August 6, 2008. Since August 14, P.L. had attended regular weekly appointments and, according to petitioner, he was now making progress.
¶ 7. The reviewer also found that, at the time of the immediate incident, petitioner showed an inconsistent attitude toward P.L.'s use of marijuana and other drugs, as well as his possession of drug paraphernalia and firearms. The reviewer concluded that over the ten-week period following P.L.'s overdose it was reasonable to believe that P.L. was at risk of further serious physical harm. In reaching this conclusion, the reviewer cited the relevant statutory provisions as well as DCF policy on egregious behavior.[2] The reviewer concluded *115 that the legal and policy standards were satisfied and that it was therefore appropriate that petitioner's name be placed in the child-abuse-and-neglect registry.
¶ 8. Petitioner appealed this decision to the Human Services Board. Before the fair hearing, petitioner filed a motion for summary judgment, which DCF opposed. The hearing officer indicated that he was inclined to grant the motion, and asked DCF to factually and legally distinguish the instant case from earlier Board decisions so as to avoid summary judgment. The hearing officer continued the matter to allow DCF to submit "a written offer of proof and legal argument on this issue," with time allowed for petitioner to file a written response. DCF filed its memorandum, and the hearing officer then issued a written recommendation to the Board that summary judgment be granted to petitioner.
¶ 9. In his memorandum, the hearing officer recounted the reviewer's decision, summarized above. He also recited "facts" that were submitted by DCF in its response to petitioner's motion for summary judgment, although these "facts" were not undisputed, as DCF specifically stated in its filing. The hearing officer did not acknowledge any disputes of fact. Instead, he concluded that because the alleged "abuse" at issue occurred "with the full knowledge and awareness" of others, including a DCF investigator, P.L.'s medical providers, and school personnel, DCF's substantiation decision should be reversed. According to the hearing officer, neither the DCF investigator nor any other individuals took legal action or attempted any other official intervention during the time in question, other than the decision to substantiate petitioner for placing P.L. at risk of harm. The hearing officer found it "patently inconsistent, unfairly punitive, and otherwise contrary to underlying statutory purposes and public policy to hold a parent liable for `child abuse' in such circumstances."
¶ 10. In reaching his conclusion, the hearing officer looked to the statutes that described CHINS proceedings, contained in a different chapter of Title 33. He noted that DCF had the authority to investigate allegations that a child was CHINS and that the definition of CHINS was a child who was "without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B).[3] The hearing officer found no discernable difference in the legislative intent or public policy underlying the statutes governing CHINS proceedings and those governing the child-abuse-and-neglect registry with respect to the alleged neglect here. The hearing officer thus concluded that DCF's inaction "essentially resolves the legal issue in this matter." According to the hearing officer, if petitioner's inaction during *116 this period was insufficient to warrant the filing of a CHINS petition, then DCF could not substantiate petitioner for placing P.L. at risk of harm during this period, on the basis of the same facts and under a seemingly-identical legal standard. Following argument before the Board, the Board adopted the hearing officer's recommendation verbatim. This appeal by DCF followed.
¶ 11. DCF argues that the Board erred in concluding that DCF could not list petitioner in its child-abuse-and-neglect registry unless it also filed a CHINS petition. We agree. While we generally defer to the Board's decision on appeal, the Board must follow the law in deciding whether a report is substantiated. In re E.C., 2010 VT 50, ¶ 6, ___ Vt. ___, 1 A.3d 1007 (mem.). The Board plainly misapplied the law here.
¶ 12. The legal standard for determining when a report of abuse or neglect is "substantiated" for purposes of the child-abuse-and-neglect registry is specifically set forth by statute. 33 V.S.A. § 4912(10). In such cases, the only question presented, both to DCF and to the Board, is whether a reasonable person would believe that a child's "physical health, psychological growth and development or welfare [was] harmed or [was] at substantial risk of harm by the acts or omissions of his or her parent." Id. § 4912(2); see also In re R.H., 2010 VT 95, ¶ 22, ___ Vt. ___, 14 A.3d 267. The statute specifically defines "risk of harm," and this definition makes no reference to CHINS proceedings or any other type of juvenile proceeding in family court. See 33 V.S.A. § 4912(4) (defining "risk of harm" as a "significant danger that a child will suffer serious harm other than by accidental means, which harm would be likely to cause physical injury, neglect, emotional maltreatment or sexual abuse"). DCF also had a specific policy applicable to cases involving "single egregious acts." The legal and policy standards governing the registry process are plain, and they do not require, nor contemplate, any inquiry into whether DCF is also pursuing a CHINS petition in family court. See Chayer v. Ethan Allen, Inc., 2008 VT 45, ¶ 10, 183 Vt. 439, 954 A.2d 783 (stating that in interpreting statutes, Supreme Court applies plain language of enactment unless language is ambiguous). The registry law clearly addresses the acts or omissions of parents and other individuals, not DCF's response to these actions.
¶ 13. Contrary to the Board's reasoning, moreover, we have expressly recognized that the statutes governing the registry process, found in chapter 49 of Title 33, have "legislative goals, functions, and procedures completely different from those" governing juvenile proceedings in family court, formerly found in chapter 55 of Title 33 and now reorganized in chapter 51. In re Selivonik, 164 Vt. 383, 391, 670 A.2d 831, 836 (1995). In Selivonik, we rejected the notion that the findings of a family court in a juvenile proceeding should be binding on DCF in determining whether to substantiate a report of abuse or neglect under chapter 49. Id. In so holding, we highlighted the absence of any language in chapter 49 that referred to judicial decisions made by the family court in juvenile proceedings. Id. We also found that the broad remedial purposes of the Child Abuse and Neglect Reporting Act would not be served by tying its specific statutory criteria to the outcome of such juvenile proceedings. Id.
¶ 14. We reach a similar conclusion here, and we reiterate that these two statutory procedures are distinct and are in no way dependent on one another. Obviously, the initiation of a CHINS proceeding implicates fundamental interests not at *117 stake in the registry process. See In re A.D., 143 Vt. 432, 435-36, 467 A.2d 121, 124 (1983) (recognizing that when State intervenes in child neglect cases, "two fundamental interests are involved: (1) the interest of parents and child in maintaining family integrity, and (2) the interest of the child in his/her safety and welfare"). There are numerous considerations that may be relevant to DCF's decision whether to file a petition to have a child declared CHINS. In this case, for example, petitioner maintained that after ten weeks of delay she had finally obtained treatment for P.L. and he was making progress. DCF may have determined that, rather than file a CHINS petition, there were less obtrusive ways in which to protect P.L.
¶ 15. In addition to other significant substantive differences in these statutes, once DCF "substantiates" a report of abuse or neglect under chapter 49, it must include that report in its confidential registryit has no discretion to do otherwise. 33 V.S.A. § 4916(a)(1). As DCF notes, it would be unsound as a matter of public policy to require DCF to file a CHINS petition every time it included someone in the child-abuse-and-neglect registry. The decision to file a CHINS petition simply does not prove or disprove that a child was in fact put at "risk of harm" by his or her parent under chapter 49. We reject the Board's conclusion that DCF's discretionary decision to file a petition to have a child declared as CHINS should determine whether a report of abuse or neglect has been "substantiated" within the meaning of 33 V.S.A. § 4912(4).
¶ 16. The Board here was asked only to decide if petitioner, through her acts or omissions, placed P.L. at risk of harm. The Board did not directly answer this question, nor did it apply the relevant law or DCF policy in reaching its conclusion. Given these errors, we reverse and remand for additional proceedings.
Reversed and remanded.
JOHNSON, J., concurring.
¶ 17. I agree that the hearing officer and the Board, while reasonably weighing the equities in this case, applied an improper legal standard and that, therefore, the matter must be remanded for reconsideration under the proper standard. I write, however, to express my concern that the Department for Children and Families (DCF) may be employing the registry law in seemingly ever-broadening circumstances as a means of compelling cooperation rather than protecting children from potential dangers posed by persons charged with abuse or neglect.
¶ 18. I first state the salient facts to better explain my perspective. P.L. spent three days at the Brattleboro Retreat after overdosing on Xanax. The discharge summary indicated that "[P.L.] did not appear to be at imminent risk to harm himself or others." He was released against medical advice, however, because there was a strong possibility that his substance abuse would continue, and thus, "there was concern that he may inadvertently overdose again in the future." While noting reports of petitioner's lax attitude toward P.L.'s use of marijuana, the summary indicated that petitioner acknowledged P.L.'s substance-abuse problem and his need for outpatient treatment. According to the summary, petitioner indicated she was "terrified" of his continued substance abuse and would provide round-the-clock supervision. The summary described P.L.'s prognosis as "guarded" and recommended, among other things, weekly outpatient substance-abuse treatment and close supervision after school, particularly in the first few weeks.
*118 ¶ 19. Apparently, in the ensuing weeks, DCF personnel urged petitioner to obtain treatment for P.L. but ultimately became frustrated with her failure to follow up on the Retreat's recommendations. In its August 6, 2008 "Notice of Substantiation and Intent to Place Name on Registry," DCF informed petitioner that her name was being placed on the child-abuse-and-neglect registry because "we have determined that a reasonable person would conclude that you did place P.L. at risk of harm by not obtain[ing] a substance abuse evaluation for him." In mid-August 2008, P.L. had a drug/alcohol assessment, which described his severity profile in various categories as low to moderate.
¶ 20. Petitioner appealed DCF's initial determination within the Department, but the registry reviewer upheld the substantiation. In his "Review of Substantiation" decision, the reviewer reiterated that the "[i]ncident for which [petitioner was] substantiated" was "not scheduling a drug and alcohol assessment for [P.L.] immediately following his drug overdose." In the section entitled "Legal standards applicable in this review," the reviewer cited, apart from definitions for "substantiated report" and "risk of harm," only DCF's "single egregious act" policy, which comes into play when the substantiation is for a particular act. The reviewer stated that, under that policy, substantiation for abuse or neglect would follow if the parent committed the act; the act was egregious; the act created a significant risk of physical harm; and the physical injury would be serious. See Vermont Dep't for Children and Families, Family Servs. Div., Family Servs. Policy Manual, Policy No. 55, at 3 (effective Jan. 1, 2007) [hereinafter DCF Policy No. 55], available at http://dcf.vermont.gov/sites/dcf/files/pdf/fsd/policies/55_Risk_of_Harm_Final_1-07.pdf. Applying this policy, the reviewer upheld the substantiation based on petitioner's failure to set up a drug and alcohol assessment during a ten-week period following P.L.'s discharge from the Brattleboro Retreat. The reviewer arrived at this decision after acknowledging petitioner's responses to the charge, including that P.L. did not get along with the first mental health clinician he saw but eventually was able to see another clinician and was making progress.
¶ 21. In petitioner's appeal to the Board, DCF appears to have backtracked from its notice of a single incident of neglect and its reliance upon its "single egregious act" policy. Indeed, after notifying petitioner of the specific incident of neglect for which she was being substantiated her failure to obtain a drug assessment for P.L.and expressly applying its policy concerning single acts of neglect or abuse, DCF apparently chose to change tactics before the Board and rely on other unnoticed shortcomings in support of its substantiation decision. According to the hearing officer, DCF disagreed that the only reason for its substantiation was petitioner's failure to obtain a drug assessment.
¶ 22. We should make it clear that DCF cannot expand its charges on appeal before the Board. I recognize that review before the Board is de novo, but de novo review does not necessarily involve the presentation of additional evidence. See State v. Madison, 163 Vt. 360, 372, 658 A.2d 536, 544 (1995) (per curiam) (noting consensus among courts and commentators that "de novo" review contemplates nondeferential review which generally relies on, but is not restricted to, existing record); cf. In re Houston, 2006 VT 59, ¶ 10, 180 Vt. 535, 904 A.2d 1174 (mem.) (holding that Board has authority to conduct fair hearings based on evidence, which necessarily implies authority to compel production of evidence). In any event, even in cases where new evidence is introduced, DCF should not be *119 permitted, in effect, to amend its charges and add issues before the Board, which would potentially violate petitioner's due process rights. Cf. Sulzer v. Envtl. Control Bd., 165 A.D.2d 270, 566 N.Y.S.2d 595, 601 (1991) (holding that Environmental Control Board's amendment of charge on administrative appeal in order to conform to evidence violated petitioner's due process rights).
¶ 23. As the majority acknowledges, the reviewer relied upon DCF's "single egregious act" policya policy applicable only in cases involving a single act of neglect or abuse. I concur with the majority that the matter must be remanded for the Board to "apply the relevant law or DCF policy," ante, ¶ 16, which in this case includes the "single egregious act" policy.
¶ 24. The majority also correctly notes that the Board failed to make proper findings in this case. Nevertheless, given the current state of the record, I share the hearing officer's and the Board's apparent skepticism regarding DCF's claims of a risk of harm, particularly when applying the "single egregious act" policy. Petitioner claims that family members closely supervised P.L. after his release from the Brattleboro Retreat and that she took P.L. to see a drug and alcohol counselor on June 13, 2008, approximately two weeks after his release, but that P.L. and the counselor were unable to form a therapeutic relationship. She further claims that when she asked for a different counselor, the local agency providing the counseling informed her that no one else at that agency was qualified to work with children. According to petitioner, P.L. saw another counselor who works with children on August 14, 2008, shortly after one became available at the agency. In its decision, the Board noted DCF's acknowledgment that petitioner reported to DCF personnel that P.L. was being closely supervised and that the first counselor she took him to was not a good match. These and other facts, if supported by the evidence and found by the Board on remand, would undermine claims of egregious neglect.
¶ 25. Substantiation for abuse or neglect must be "`based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected.'" In re R.H., 2010 VT 95, ¶ 3, ___ Vt. ___, 14 A.3d 267 (quoting 33 V.S.A. § 4912(10)). An "abused or neglected child" includes one who "is at substantial risk of harm by the acts or omissions of his or her parent." 33 V.S.A. § 4912(2). "Risk of harm" means a "significant danger that a child will suffer serious harm." Id. § 4912(4) (emphases added). Further, under the "single egregious act" policy, the act triggering substantiation for abuse or neglect must be egregious"`conspicuously and outrageously bad or reprehensible'"thereby creating a "significant risk" that the child could have suffered a serious physical injury. In re R.H., 2010 VT 95, ¶ 6, 14 A.3d 267 (quoting DCF policy). The burden is on DCF to justify the substantiation, and the Board reviews DCF's determination de novo. Id. ¶¶ 16-17. Plainly, this is a rigorous standard for placement on the child-abuse-and-neglect registryand rightfully so given the potentially significant consequences for those placed on the listincluding loss of livelihood.
¶ 26. The child-abuse-and-neglect registry is intended to permit certain persons working in fields involving contact with children to access a list of the names of people who have been substantiated for child abuse or neglect and pose a significant threat to children. DCF must be mindful of this purpose when determining whether a person is to be substantiated for abuse or neglect and thus placed on the registry. In particular, the "single egregious *120 act" policy ensures that "an isolated single incident of conduct that causes a risk of harm to the child should not cause a person to be included in the registry absent relatively extreme circumstances." Id. ¶ 30. The record in this case must be fleshed out and findings made on remand, but it is highly questionable, based on the current state of the record, whether the "extreme circumstances" required in In re R.H. are present here.
¶ 27. Although the hearing officer and the Board wrongly tied substantiation to the filing of a CHINS petition, their apparent concern was the attenuated causal link between the act for which petitioner was substantiated and the potential for a significant risk of physical harm to P.L. If it is true that petitioner made two appointments for a drug assessment, the first occurring within two weeks of P.L.'s discharge from the Retreat, do her actions reflect such a lack of urgency about her son that she should be placed on an abuse registry to protect other children from her? Or did DCF employ its substantiation tool to compel cooperation from petitioner with respect to the discharge recommendations absent any real significant threat of harm to P.L.? The Board must objectively apply statutory law and relevant DCF policies, make findings, and consider these questions on remand.
¶ 28. I am authorized to state that Justice SKOGLUND joins this concurrence.
NOTES
[1] A substantiated report is one that is "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." 33 V.S.A. § 4912(10). An "abused or neglected child" includes a child "whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent." Id. § 4912(2). "Risk of harm" means a "significant danger that a child will suffer serious harm other than by accidental means, which harm would be likely to cause physical injury, neglect, emotional maltreatment or sexual abuse." Id. § 4912(4). We note that the laws governing the registry process have changed since DCF substantiated petitioner. See 2007, No. 168 (Adj.Sess.). We apply the law in effect as of DCF's substantiation decision, and all statutory references are to such laws, unless otherwise noted. See 2007, No. 77 (essentially setting forth law in effect at time that petitioner here was substantiated).
[2] This policy states that in determining whether a child was placed at "risk of harm," an assessment "should result in a substantiation if a reasonable person would believe that all four of the following criteria are met: [t]he parent or caretaker did the act alleged; [t]he act was egregious; [t]here was a significant risk that the child could have been physically injured as a result; and [t]he physical injury would be serious." Vermont Dep't for Children & Families, Family Servs. Div., Family Servs. Policy Manual, Policy No. 55, at 3 (effective Jan. 1, 2007) [hereinafter DCF Policy No. 55] (emphasis omitted), available at http://dcf.vermont.gov/sites/dcf/files/pdf/fsd/ policies/55_Risk_of_Harm_Final_1-07.pdf. The term "egregious" is defined as "conspicuously and outrageously bad or reprehensible." Id. at 3 n. 1.
[3] We cite to the current version of this statute, mindful that no CHINS petition was filed at the time of the instant case before the Board. The juvenile statutes were reorganized, effective January 1, 2009. See 2007, No. 185 (Adj.Sess.), § 14.