*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-412

JANUARY TERM, 2014

| | |
|---|---|
| In re S.L., Juvenile | }    APPEALED FROM: |

}    Superior Court, Chittenden Unit,
}    Family Division
}
}    DOCKET NO. 116-4-13 Cnjv

Trial Judge: Alison Arms

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's order finding his son S.L. to be a child in need of care or supervision (CHINS). He argues that the court applied the wrong legal standard in evaluating whether S.L. was at risk of harm. We affirm.

S.L. was born in August 2010, just after a CHINS petition was filed with respect to his sister and step-siblings. In April 2013, the Department for Children and Families (DCF) filed a petition alleging that S.L. was CHINS. The parties stipulated to the following facts. In 1994, father was convicted of lewd and lascivious conduct on his minor sister, and he received a three-to-five year incarcerative sentence. Father did not engage in sex offender treatment. During the CHINS proceedings involving S.L.'s sister and half-siblings, father denied he was guilty of lewd and lascivious conduct. In that CHINS case, the court found that father had sexually abused his sister when she was a child and that there was ongoing abuse over a span of years. Based on a 2011 psychosexual evaluation of father, the court determined that father needed to engage in sex offender treatment before he could have unsupervised contact with S.L.'s sister and step-siblings. That order is still in effect. At the time that the instant CHINS petition was filed, father continued to deny that he had sexually abused his sister, and he still had not participated in sex offender treatment. S.L.'s mother had been allowing father to have unsupervised contact with S.L.

In addition to these stipulated facts, the court credited the testimony of Dr. John Holt, an expert in the preparation of psychological evaluations and risk assessments for sex offenders. Dr. Holt had prepared the 2011 psychological evaluation of father. In this report, he concluded that while father was at a low risk level to reoffend, father should participate in sex offender treatment based on antisocial aspects of his personality. Because of these antisocial tendencies, Dr. Holt found that father fit the typology of an opportunistic offender, despite the passage of more than eighteen years since the original offense. Dr. Holt opined that it would be prudent to limit father's contact with children until a sex offender treatment provider approved of such contact.

Dr. Holt testified at the merits hearing in the instant case that his recommendation remained the same despite the passage of time. Assuming that he had no additional information in the two and a half years that had elapsed since the evaluation, and assuming that father had not

participated in sex offender counseling in the interim, Dr. Holt believed that father still should obtain sex offender counseling and have supervised visitation with his children, and, further, that he should undergo another psychosexual evaluation.

Based on these findings, the court concluded that S.L. was CHINS. In reaching its conclusion, the court considered the factual findings of the orders involving S.L.'s sister and step-siblings, finding that those facts remained relevant to the instant CHINS petition. The court reasoned that mother and father were on notice, after lengthy and contested hearings and judicial findings, that father should be supervised around his children. While S.L. was not specifically named in the earlier CHINS order, he was nonetheless similarly situated to father's other children. No evidence was presented that father had addressed the need for sex offender treatment and follow-up evaluation. Nor was any evidence presented that mother was aware that father had met these requirements. Accordingly, the court found that mother was on notice of father's past and the potential risk he presented to his children, not merely to those children who were the specific subjects of prior CHINS cases. The court concluded that based on mother's knowledge of an outstanding order that father should not be allowed unsupervised contact with children and given father's unaddressed need for sex offender treatment, S.L. was without proper parental care necessary for his well-being. This appeal followed.[*]

Father argues on appeal that DCF failed to prove that S.L. was at a sufficient risk of harm to warrant the court's CHINS finding. He complains that the court did not quantify the risk that he posed to S.L., and he suggests that the court improperly accepted any risk of harm as sufficient. According to father, he poses a very low risk of harm to S.L. He points to the fact that he has not reoffended since his 1994 conviction. Father also suggests that antisocial personality traits are not limited to sexual offenders, and thus, these personality traits did not prove that he was at a risk to reoffend.

We reject father's arguments. The trial court applied the appropriate legal standard here, and its decision is supported by the evidence. As relevant here, a child is "in need of care or supervision" when he or she "is without proper parental care, or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B). Certainly, the likelihood that a child may be harmed is relevant in this determination, but we do not require the court to make findings concerning a precise "risk of harm." The court similarly is not required to apply the definition of "risk of harm" applicable to the child protection registry. See In re M.E., 2010 VT 105, ¶ 13, 189 Vt. 114 ("[W]e have expressly recognized that the statutes governing the registry process, found in chapter 49 of Title 33, have legislative goals, functions, and procedures completely different from those governing juvenile proceedings in family court." (quotation omitted)). As we have explained, "the central concern in CHINS proceedings is the ability of the

---

[*] The trial court docket entries indicate that the trial court stayed the disposition hearing in this case pending the outcome of this CHINS appeal. This approach is inconsistent with our recent decision in In re D.D., 2013 VT 79, ¶¶ 30-31. We indicated in D.D. that disposition hearings should proceed during the pendency of a CHINS appeal. Id. We explained that a party could ask this Court to stay a CHINS appeal pending disposition, but regardless of whether such request was made, an appeal of the merits would not "delay or stay proceedings in the family division, including the disposition hearing." Id. ¶ 31. We found that this approach—allowing disposition to proceed while the CHINS merits decision is on appeal—best serves "the Legislature's goal of resolving neglect and dependency cases in a timely way so that children can achieve permanency." Id. It thus appears that the disposition hearing in this case should not have been stayed pending appeal.

parents to render appropriate and necessary care for the child's well-being." E.J.R. v. Young, 162 Vt. 219, 222-23 (1994). The State has the burden of establishing by a preponderance of the evidence that a child is CHINS. 33 V.S.A. § 5315(a). On review, we "will uphold the court's factual findings unless clearly erroneous and the court's legal conclusions when supported by these findings." In re D.D., 2013 VT 79, ¶ 34.

The record here supports the court's determination that mother's decision to allow father unsupervised contact with S.L. rendered S.L. without proper parental care necessary for his well-being. Dr. Holt explained in detail why he believed that father's antisocial personality traits were significant enough to require him to participate in sex offender treatment, notwithstanding his generally low risk to reoffend sexually. As set forth above, Dr. Holt opined that, given father's anti-social orientation, it was possible that father fit the typology of sex offender that is opportunistic and indiscriminate in victim selection. Dr. Holt reiterated his conclusions at the instant merits hearing, and the trial court found his testimony credible. While father disagrees with Dr. Holt's assessment, it is for the trial court, not this Court, to "determine the credibility of witnesses and to weigh the evidence." In re A.F., 160 Vt. 175, 178 (1993). The possibility that father could sexually abuse S.L. poses a sufficient risk of harm to S.L. to support the court's CHINS determination and to require that any father-child contact be supervised.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice