VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    23-AP-372

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2024

In re X.L. & K.L., Juveniles          }   APPEALED FROM:
(S.A., Mother\* & A.L., Father\*)       }
                                       }   Superior Court, Lamoille Unit;
                                       }   Family Division
                                       }   CASE NOS. 22-JV-01712 & 22-JV-01713
                                           Trial Judge: Robert R. Bent (Ret.)

In the above-entitled cause, the Clerk will enter:

Mother and father appeal the family court's order finding that their sons, X.L. and K.L., were children in need of care or supervision (CHINS). On appeal, parents argue that the evidence does not support the court's findings that the children were at risk of harm and therefore CHINS. We affirm.

In November 2022, the State filed a petition alleging that X.L. and K.L., then five and seven years old, were CHINS for lack of proper parental care. At the time, the children were in parents' care and a conditional-custody order from a prior CHINS proceeding had recently expired.[1]

Following an evidentiary hearing, the court found the following. At the time the petition was filed, the condition of parents' home was unsanitary with dishes piled up, flies and larvae of flies present in the home, trash piled on the porch and outdoors, broken windows, and accumulated clutter to the point where it was difficult to move around the dwelling. Landlord gave notice of eviction to parents in 2022 because he was concerned about the condition of the property. After parents' landlord took possession of parents' home in January 2023, he found hypodermic needles in various locations. Both parents had a history of substance abuse and participated in medication-assisted therapy. Although there were signs of substance abuse,

---

[1] X.L. and K.L. were first subject to a CHIN proceeding in 2021. In that case, the court granted custody to parents under a conditional-custody order, and it expired in September 2022.

including the fact that mother spent an inordinate amount of time in her bedroom, the court found there was insufficient evidence to conclude parents were using substances at the time the petition was filed. Mother was not able to provide adequate supervision for the children. Both children were emotionally dysregulated and required substantial supervision. X.L. was emotionally reactive and aggressive to others, including his brother. He was on an IEP and had a one-on-one behavior interventionist at school. He absconded from school and struck adults working with him. X.L. burned K.L. multiple times, likely with a lighter. K.L.'s behavior was not as severe as X.L.'s, but he was out of control five-to-six times a day at school. The children required professional assistance, but parents did not fully cooperate with efforts by educational providers to obtain mental-health services for the children. Parents would not sign documents allowing K.L. to have counseling at school and at one point father withdrew permission for X.L. to have counseling. Father was aggressive in interactions with the principal. Father also told a provider that X.L. did not have to talk about his family life. The children attended a program outside of school time but parents did not send food as required and did not pick up the children on time so the teacher had to bring the kids home on several occasions.

Based on these findings, the court concluded by a preponderance of the evidence that the children were CHINS for lack of proper parental care because the chaotic and unstructured household, combined with parents' refusal to provide adequate treatment to the children, created a substantial risk of harm to the development of the children, who both had high needs. Parents appeal.

"[T]he focus of a CHINS proceeding is the welfare of the child." In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304 (quotation omitted). The State has the burden of proving by a preponderance of the evidence that each child was "without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. §§ 5315(g), 5102(3)(B). Because a CHINS proceeding is aimed at children's welfare, "the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm." In re J.C., 2016 VT 9, ¶ 7, 201 Vt. 192.

Mother first argues that the court's findings did not support the court's determination that the children were at risk of harm. Mother relies on the definition of "risk of harm" in the statute regarding the child-protection registry and asserts that the court's identified risk to the children's developmental needs here did not suffice under that definition, which requires a "significant danger that a child will suffer serious harm by other than accidental means, which harm would be likely to cause physical injury, or sexual abuse." 33 V.S.A. § 4912(14) (defining risk of harm). The definition employed by mother is inapplicable in this proceeding. The child-protection registry statute specifies that its definitions are applicable in proceedings under that subchapter, which does not include CHINS proceedings. Moreover, this Court has observed that the registry statute has "legislative goals, functions, and procedures completely different from those governing juvenile proceedings in family court." In re M.K., 2015 VT 8, ¶ 11, 198 Vt. 233 (quotation omitted); see In re M.E., 2010 VT 105, ¶ 15, 189 Vt. 114 ("The decision to file a CHINS petition simply does not prove or disprove that a child was in fact put at 'risk of harm' by his or her parent under chapter 49."). Demonstrating risk of harm for purposes of child protection under § 5102(3) does not equate to the risk of harm required in the child-protection statute. Therefore, the court did not have to find behavior necessary to fit that definition.

Mother also contends that there was no risk of harm because the evidence at most established that parents were living in poverty and challenged by substance-abuse recovery, but the children were properly supervised, fed, and not at risk of physical harm. Father similarly asserts that the evidence does not support a finding that the children lacked proper parental care because they were properly clothed and fed. A CHINS determination does not require a risk of physical harm or lack of proper clothing or food. The State alleged that the children were "without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B). Here, the court's finding regarding lack of proper parental care focused on the chaotic and unsanitary condition of the home, the lack of supervision for children who were aggressive and emotionally dysregulated, and the failure to cooperate in providing educational and mental-health support for two young children, who both had complex and enhanced behavioral needs. These findings supported the court's determination that parents were unable to provide the appropriate care necessary for the children's wellbeing.

Parents also argue that the facts do not support some of the court's findings. None of the alleged factual errors identified by parents have merit. "On review, we will uphold the trial court's findings unless they are clearly erroneous, and the court's legal conclusions will stand when supported by the findings." In re M.M., 2015 VT 122, ¶ 12, 200 Vt. 540.

Mother contends that contrary to the court's findings, parents were engaged in the children's therapy by attending monthly treatment-team meetings at school and agreeing to special education services for X.L. She further claims that parents' choice to decline services did not place X.L. at risk of harm. While there was evidence demonstrating that parents had some role in providing services for the children, the evidence also supported the court's finding that the children were dysregulated and needed services, parents were not fully cooperative with attempts by educational providers to meet these needs, and the lack of treatment put the children at risk of harm. The family court did not err in assessing the evidence in the manner that it did, and we will not reweigh the evidence on appeal. In re S.B., 174 Vt. 427, 429 (2002) (mem.) (recognizing that it is not Supreme Court's role "to second-guess the family court or to reweigh the evidence").

Father argues that the evidence does not support the court's finding that X.L. burned K.L. multiple times because there was no witness to these events and no medical testimony to support the inference. Although parents did not notice the injuries, the State's witnesses observed injuries consistent with burning on K.L's torso, leg, and back. In addition, witnesses described that X.L. was violent and aggressive towards K.L., and that parents provided inadequate supervision. Father's oldest son, who supervised the children at times, observed that K.L. and X.L. were out of control and that X.L. was violent and hurt K.L. In evaluating whether a child lacks proper parental care, a court may "draw upon its own common sense and experience." In re L.M., 2014 VT 17, ¶ 30, 195 Vt. 637 (quotation omitted). The evidence was sufficient for the court to reasonably infer that the burn marks were caused by X.L. In any event, these marks were not the main reason for the court's CHINS determination, which focused on the chaotic and unsanitary conditions in the home, the inadequate parental supervision, and the lack of parental engagement in services for children who had significant behavioral needs.

Father also argues that there is no evidence to support the court's findings that he terminated counseling and was trying to keep the boys from talking about their home life. Father alleges that although counseling at school terminated in October, father had initiated counseling for X.L. outside of school. The evidence supports the court's finding that parents "partially cooperated with efforts" by the school to obtain mental health care for the children and blocked some efforts. The court did not err declining to put much weight in father's assertion regarding the outside-of-school counseling in that father could not name the person who was providing counseling, and did not inform the Department for Children and Families (DCF) that X.L. had another counselor. Moreover, whatever additional counseling was initiated the court's finding that parents did not cooperate with the school's effort to provide counseling was supported by the evidence.

Father also claims that he was not trying to keep the children from talking about their home life; he asserts that he merely wanted X.L. to know that he could not be forced to talk about his home life. The evidence showed that father was very aggressive in talking with the principal, yelled and shook his finger in her face, and demanded that a provider tell X.L. he did not have to talk about his home life. Given the context of father's demands, the evidence provided an adequate basis for the court to find that father wanted to maintain privacy and did not want the children's statements to be used against them by DCF.

Because the evidence supports the court's findings that there was a lack of proper parental care, there are no grounds for reversal.

Affirmed.

BY THE COURT:

_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice

4